UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP DREW MITCHELL,

                Petitioner,

v.                                      Case Number: 06-CV-11203
                                        Honorable Marianne O. Battani

DOUGLAS C. VASBINDER,

                Respondent.

_____/

**OPINION AND ORDER
(1) DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND
(2) DENYING PETITIONER'S MOTIONS [DKT. ## 20, 23, 25, 28, 30, & 31] AS MOOT**

## I. Introduction

Before the Court is Petitioner Phillip Drew Mitchell's petition for writ of habeas corpus,

filed pursuant to 28 U.S.C. § 2254. (Dkt. #1). Petitioner is a state inmate currently incarcerated

at the Oaks Correctional Facility[1] in Manistee, Michigan. He was charged with armed robbery,[2]

but was convicted of the lesser offense of unarmed robbery,[3] by a Wayne County, Michigan,

Circuit Court jury on November 15, 2002. Following his conviction, on December 5, 2002, the

trial judge in the case, The Honorable Daniel P. Ryan, sentenced him, as a fourth-habitual

offender,[4] to life imprisonment. In his *pro se* pleadings, Petitioner challenges his conviction and

sentence on the following grounds: (1) prosecutorial misconduct, (2) ineffective assistance of

---

[1]At the time Petitioner filed his petition for writ of habeas corpus with this Court, he was incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

[2]MICH. COM. LAWS § 750.529.

[3]MICH. COMP. LAWS § 750.530.

[4]MICH. COMP. LAWS § 750.12(a).

counsel, (3) trial court error in reinstating the armed-robbery charge, (4) insufficient evidence, (5) abuse of discretion by the trial court in failing to suppress evidence of a tainted photographic line-up, (6) whether there were substantial and compelling reasons to exceed the sentence guidelines range, and (7) whether his sentence was disproportionate. For the reasons stated below, the Court denies the petition.

## II. Background

Petitioner's troubles in this case began at the Burger King restaurant located at 1425 West Lafayette in Detroit, Michigan, on August 17, 2002, at 5:45 p.m. According to the prosecution's theory, Petitioner entered Burger King and, while holding his hand under his shirt, demanded money from the individual at the cash register. The prosecution opined that Petitioner then took money out of the cash drawer when it was opened and subsequently fled. Petitioner was initially charged with armed robbery.

At the preliminary examination, after hearing the testimony of Lakeisha Jenkins, the complainant in this case, the district court judge reduced the armed-robbery charge to unarmed robbery.

> THE COURT: This Court finds that the offense of robbery occurred in the
> City of Detroit. There is probable cause that the offense occurred, and probable cause that the defendant committed the offense. However, this Court feels that the element of a gun was not sufficient and I'm going to bind him over on unarmed robbery.

(Preliminary Examination Tr. 18, Sept. 4, 2002.)

2

However, after the case was bound over, at a *Goecke*[5] hearing, Judge Ryan reinstated the

armed-robbery charge, finding that there was sufficient evidence presented at the preliminary

examination to reinstate that charge.  Judge Ryan stated:

> The Armed Robbery charge is reinstated.  In this particular matter it doesn't
> necessarily matter whether or not the – the witness actually saw something.
> Armed Robbery is sufficient if a weapon is displayed or implied, and based upon
> the fact that the testimony indicates that it was implied, that it should have
> appropriately been bound over.  Any other – as far as the  – so the motion to
> reinstate the Armed Robbery charge is granted and Armed Robbery is reinstated.

(*Goecke* Hr'g, 12, Oct. 18, 2002.)

Following that hearing, Petitioner filed an interlocutory appeal, arguing that the trial

judge abused his discretion in reinstating the armed-robbery charge.  The Michigan Court of

Appeals declined review.  *People v. Mitchell*, No. 244752 (Mich.Ct.App. Nov. 13, 2002).

Trial in this case began on November 14, 2002.  Lakeisha Jenkins was first to testify.

According to her testimony, on the day in question, she was working as a cashier at the Burger

King located at 1425 West Lafayette in Detroit, Michigan.  Ms. Jenkins testified that as she was

taking a woman's order, a man came over the chain and acted like he knew the woman placing

the order.  She said that when she opened the cash-register drawer to give the woman change, the

man reached into the drawer with his left hand and grabbed the money.  It was Ms. Jenkins's

testimony that the man had his right hand tucked in his waistband as he was reaching into the

drawer.  Ms. Jenkins said that she tried to hold on to the money, but when the man told her "to

stand back, bitch, or I'll kill you," she assumed that he had a weapon, and so, she stood back.

(Trial Tr. vol. I, 97, Nov. 14, 2002.)  Ms. Jenkins further testified "[w]hy would he just be

---

[5]*People v. Goecke*, 457 Mich. 442, 579 N.W.2d 868 (1998).

3

standing there with his right hand over his pant like this and he robbed–you know, taking money from me, I don't know."  (Trial Tr. vol. I, 98-99, Nov. 14, 2002.)   It was estimated that the man took about forty or fifty dollars.

According to Ms. Jenkins, when the police arrived at the scene, about five minutes after the incident, they asked her to describe the perpetrator.  She testified that she told the police that the man was a heavyset black male, about 5'11", wearing a navy-blue shirt and white pants.

Shortly after the robbery, Ms. Jenkins testified that she attended a photo lineup, where she immediately identified Petitioner as the man who robbed her at Burger King that evening. She also testified that she attended the preliminary examination and identified Petitioner as that person.  At trial, Ms. Jenkins also identified Petitioner as the man who robbed her.

Additionally, at trial, the prosecutor showed Ms. Jenkins several photographs that were taken from the Burger King surveillance camera.  She identified and explained those photographs as follows: (1) the first picture she was shown was that of Petitioner walking into the lobby of the Burger King; (2) the second was the woman who was placing the order, along with Ms. Jenkins herself, and Petitioner; (3) the third was Ms. Jenkins at the cash register, the woman who was placing the order, and Petitioner approaching the customer; (4) the fourth was Ms. Jenkins opening up the register and Petitioner trying to take the money out of the drawer; the picture also showed them tussling over the money; and (5) the fifth was Ms. Jenkins yelling, and Petitioner, with the money in his hand, running away.

Detroit Police Officer Mark Salazar testified next.  According to his testimony, he conducted a follow-up investigation of the incident.  After receiving information regarding the identification of the perpetrator, Officer Salazar set up a surveillance in the designated area.

4

Officer Salazar testified that he then saw a man, fitting the description, approached him, identified him as the man, and subsequently arrested him.  In court, Officer Salazar identified Petitioner as the man that he arrested.

Eric Kimble, a Detroit Police Officer, who was assigned to the armed-robbery unit at the time of the incident, testified next.  According to Officer Kimble, when he arrived at the scene, only a few customers were present.  He said that he did not take any statements from those individuals because they indicated that they did not see a robbery take place.  Officer Kimble testified that he was not able to collect any fingerprints at the scene because of the contamination.  He said that he conducted a photo lineup four days later, on August 21, 2002, and Ms. Jenkins

identified Petitioner immediately.

> Q.    Okay.  And did Miss Jenkins identify the defendant in this case in those –
>        from those photographic –
>
> A.    Yes, she did.
>
> Q.    From those pictures?
>
> A.    Yes, immediately.
>
> Q.    And when you say immediately, like how soon?
>
> A.    It was less than 10 seconds.

(Trial Tr. vol. I, 141, Nov. 14, 2002.)

When asked about his duties in the case, the following exchange took place between the prosecutor and Officer Kimble:

> Q.    Okay.  And was that the extent of your duties in this case?
>
> A.    No.  I had an opportunity to speak to the defendant and do an interrogation

5

sheet, see if he had any – if he wanted to make a statement.

MS. HUGHES:          Objection to this line of questioning, Your
                     Honor, whether he spoke to the defendant.
                     Defendant has an absolute right to keep
                     silent or not to keep silent and that's not
                     admissible.

THE COURT:           Overruled, overruled.  May proceed.

Q.      (By Ms. Korkis, continuing): Go ahead and proceed.

A.      Speak to the defendant to finish a – my warrant package here of the facts
        that I had in the case and submit it to the Prosecutor's Office for
        conclusion on charges if – conclusion on charges.

MS. CORKS:  And no further questions.

(Trial Tr. vol. I, 141-42, Nov. 14, 2002.)

The prosecution then rested.  The defense moved for a directed verdict,

arguing that because there was no showing of a gun, and thus, no armed robbery, the case should

be dismissed.  The trial court denied the motion stating:

[T]here's clear case law, a hand held in a waistband under [*Barkley*] and other
cases is – in a manner to make somebody believe a weapon – they either
possessed a weapon or was implied, the combination of the conduct plus the
words are sufficient to warrant a denial of a motion for directed verdict.

(Trial Tr. vol. I, 151, Nov. 14, 2002.)

Petitioner presented no evidence.

The trial judge instructed the jury on both the armed-robbery charge and on the unarmed-

robbery charge.  Defense counsel objected to the trial court giving an instruction on the lesser

offense of unarmed robbery.  Subsequently, the jury returned a verdict of guilty of unarmed

robbery.

6

Sentencing was held on December 5, 2002.  At that time, defense counsel indicated to the

trial court that Petitioner advised her that he wished to represent himself.  The trial court allowed

Petitioner to discuss the situation and to present his motions to the court: (1) that he did not have

notice of the habitual offender enhancement;[6] (2) for a directed verdict of acquittal; and (3) for

ineffective assistance of counsel.  The trial court denied the motions.  Petitioner's attorney made

a statement to the trial court before the trial court sentenced Petitioner.  The trial court then

sentenced Petitioner to life in prison, with the possibility of parole.  It stated:

> THE COURT:  Okay.  The record is as follows: Beginning with almost 20
> years ago, you started out with Robbery Second, Attempted Robbery, Physical
> Injury Aided by Another, convicted in Buffalo, New York of that offense.  You
> received three to six years for that offense.
> Subsequent to that or actually before that, 20 years ago, Burglary, Illegal
> Entry Dwelling, Criminal Trespass Second, Larceny; that is, again, Buffalo, New
> York.  That was one year to the county jail in 82.  Actually the commitment was

---

[6]On November 8, 2002, at a pretrial motion hearing, a pretrial settlement offer was placed
on the record.

> MS. HUGHES: I think the record should reflect the Pretrial
> Settlement Offer.

> MR. DAKMAK: Your Honor, we have offered the defendant one
> count of Robbery Unarmed on each file, dismissing a Habitual Fourth Offender
> Notice, essentially taking a life sentence off the table, with a sentence agreement
> of one year to 15 years in the Michigan Department of Corrections.
> I have the defendant's extensive criminal history from the State of New
> York indicating numerous burglaries and robberies along with quite a few
> misdemeanor convictions.
> It's my belief that if the defendant is convicted of, at the bare minimum,
> Robbery Unarmed, taking property by force without a weapon, he's going to be
> subject to a life offense.  If he's convicted of Robbery Armed, his guidelines will
> be in the neighborhoood of 25 years on the minimum, Your Honor.  This is open
> today.

(Pretrial Motion Hr'g, 24, Nov. 8, 2002.)

7

83 I believe ultimately.  That was -- they have 93, or actually the commitment date is July 5th of 1983.

Continuing on, Assault With Intent ultimately resolved for Harassment in 82.  You got credit for time served there.

And also Burglary Third, there was a plea.  You received one year for that.

Then you have Reckless Endangerment, Unauthorized Use of a Vehicle, 82, six months, Barrien (sic) County Jail.

84, Burglary Third, New York, 30 months to five years.  Parole was revoked in 1990.  That was one of the ones that we talked about because of the fact that we go from 10 years from the date of discharge as opposed to the date of conviction.  We discussed that as it relates to -- potentially to MRE 609 issues.

Then 93, you had Sexual Abuse Contact, Forcibly Unlawful Imprisonment, Criminal Possession of Controlled Substance.  The -- that was a 93 case.  There's no disposition on that.

Reckless Endangerment, Criminal Mischief, 96 from, again, Barrien (sic) County.  Received time served in 97 on that.

96, Unauthorized Vehicle Without Owner's Consent.  97, time served.

Another larceny, 96, from Amherst.  There was a plea with conditional discharge.

97, Criminal Possession Controlled Substance Fifth, received one year.

99, Retail Fraud, Redford Township, misdemeanor.

And that is the completion of an approximately 20-year history of a career criminal.

And subsequently, as a result, under Enhanced Fourth, you'll be receiving life in prison.

The defendant does have an automatic right to an appeal and you need to send the appellate paperwork in.

Under Habitual Four it will be life in prison.

(Sentencing Hr'g Tr. 217-18, Dec. 5, 2002.)

Following his sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals.  The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded for re-sentencing because the trial court did not articulate, on the record, why it upwardly departed from the sentencing guidelines.  *People v. Mitchell*, No. 247129, 2004 WL 1837673 (Mich.Ct.App. Aug. 17, 2004).  On remand, on September 9, 2005, Petitioner was again sentenced to life imprisonment.  The trial court stated:

8

THE COURT:  Okay.  As far as the substantial and compelling reasons for the life sentence, the – first of all, the legislature gives me the option to impose life as an alternative.  To the extent that the Court of Appeals considers that to be a departure, the legislature has already spoken and indicated that once you reach that magnitude, that the court does have the option for life in prison.

Secondly, both then and now, there – outstanding pending charges for additional criminal activity which hadn't even been resolved, both out of the 36th District Court and the 17th District Court.  The – and those aren't even factored into this.

What the – what is not necessarily counted or considered in this is that your criminal history starts back as early as 1982, and at the time of this, it – it is, in essence, a 20-year history of criminal history.  And as the prosecutor, Ms. Screen, pointed out, every single time you are released from prison or the institutionalized setting, it is virtually sometimes within months before you are picked up and convicted of either misdemeanor and/or additional felony criminal activity.  And this – basically the only time you don't commit felonies is when you're in custody and/or incarcerated either in local prison and/or state prison.

And for those reasons, the court believes that after having accomplished a significant criminal record over 20-year period – and every single time you get out, you commit another offense.  That at the time of the sentencing originally and even still as of this date, there were additional matters which were out there which you haven't even been – hadn't even been resolved.  There's three warrants out of 36th District Court and the 17th District Court.

Because of all of those reasons, Mr. Mitchell, the court believes that there are substantial and compelling reasons to impose life as a Habitual 4 for the jury conviction of Unarmed Robbery.

(Re-sentencing Hr'g Tr. 15-17, Sept. 9, 2005.)

Petitioner again appealed that sentence to the state appellate courts, raising the following:

I.      Were there substantial and compelling reasons to exceed
        the sentence guideline range?

II.     Was the sentence disproportionate?

While his appeal was pending, on March 21, 2006, Petitioner filed the present habeas petition.  Respondent filed its answer to the petition on October 3, 2006.  The Michigan Court of Appeals denied his sentencing claims on October 31, 2006.  *People v. Mitchell*, No. 265290, 2006 WL 3077521 (Mich.Ct.App. Oct. 31, 2006).  The Michigan Supreme Court denied his

application for leave to appeal on those issues on April 4, 2007.  *People v. Mitchell*, 477 Mich. 1067, 728 N.W.2d 868 (2007) (Cavanagh, J., and Kelly, J., would remand for re-sentencing). Respondent had difficulty in locating all the necessary Rule 5 materials; they were eventually filed on January 22, 2009.  (Dkt. # 32.)

In his pending petition, Petitioner raises the following claims:

I.    [Petitioner] was denied his state and federal constitutional right to a fair trial where the prosecutor elicited, over defense objection, evidence of [Petitioner's] silence in her case in chief.

II.   The trial court abused its discretion in denying the [Petitioner's] motion to preclude the prosecution from impeaching [Petitioner] with a prior robbery conviction.

III.  [Petitioner] was denied a fair trial, an impartial jury, and the effective assistance of counsel where two of his jurors had either been the victim of an armed robbery or had a relative who had recently been the victim of an armed robbery, where [Petitioner] was on trial for armed robbery.

IV.   [Petitioner] is entitled to a remand for an evidentiary hearing to establish that trial counsel was ineffective in failing to vigorously cross-examine the complainant, and in failing to make an offer of proof regarding [Petitioner's] testimony.

V.    The court erred reversibly when it reinstated the armed robbery charge.

VI.   Where the evidence of armed robbery was insufficient, [Petitioner] is entitled to a new trial where the jury was allowed to consider this charge in violation of due process, which substantially decreased [Petitioner's] chances of acquittal.

VII.  The trial court erred in failing to suppress evidence of any pretrial photographic line-up when [Petitioner] was in custody and available for a "live" line-up and there were no other extraordinary circumstances to support the officer's decision to show photographs of [Petitioner] Mitchell to the victim instead of [Petitioner] in person.

Subsequently, after the Michigan Supreme Court denied his application for leave to

appeal on his sentencing claims on April 4, 2007, Petitioner then added the following two issues

to his habeas petition:

     I.     Were there substantial and compelling reasons to exceed the sentence
           guideline range?

     II.    Was the sentence disproportionate?

### III.  Standard

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]"

the standard of review federal courts must apply when considering applications for a writ of

habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.

*See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) imposes the

following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts normally are bound by a state court's

adjudication of a petitioner's claims unless the state court's decision was contrary to or involved

an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d

429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ;

rather, the state court's application of federal law "must have been objectively unreasonable."

*Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal

quotations omitted)).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ

of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct."); *see also*

*West v. Sibilate*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete

deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the
> governing law set forth in our cases . . . .  A state-court decision will also be
> contrary to this Court's clearly established precedent if the state court confronts a
> set of facts that are materially indistinguishable from a decision of this Court and
> nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  *Williams*, 529 U.S.

at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable . . . .
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law . . . .  Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that
> court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly. Rather, that
application must also be unreasonable.

*Id.*, at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*,

475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006);

*Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512

(6th Cir. 2003) (en banc).

  With that in mind, the Court proceeds to the merits of Petitioner's habeas petition.

## IV.  Discussion

### A.  Prosecutorial misconduct

  Petitioner first argues that the prosecutor improperly elicited testimony that he exercised

his right to remain silent, thereby violating his right to due process. Here, the Michigan Court of

Appeals, the court that rendered the last reasoned opinion in this case stated:

> Defendant first argues that the prosecutor improperly elicited testimony
> that he exercised his right to remain silent, thereby violating his right to due
> process. We disagree. We review constitutional questions de novo. *In re
> Hawley*, 238 Mich.App 509, 511; 606 NW2d 50 (1999).
>
> It is well settled that a prosecutor may not use a defendant's post-*Miranda*
> silence as evidence of guilt or to cast doubt on a defendant's credibility. *See
> People v. Dennis*, 464 Mich. 567, 572-574; 628 NW2d 502 (2001). However,
> "the inadvertent elicitation of testimony that [a] defendant exercised his *Miranda*
> right to decline police questioning . . . d[oes] not constitute a violation of [the]
> defendant's constitutional right of due process . . . ." *Dennis*, *supra* at 583. In
> this case, when asked about the extent of his duties, a police officer mentioned
> that he asked defendant whether he wanted to make a statement. To the extent the
> officer's response can be viewed as a reference to defendant's exercise of his
> right to remain silent, it was inadvertent, brief and isolated. Significantly, the
> officer never stated whether defendant actually made a statement or not.
> Moreover, no attempt was made to draw an adverse inference from defendant's
> (presumed) silence. Under these circumstances, defendant's right to due process
> was not violated.

*Mitchell*, No. 247129, 2004 WL 1837673 at 1.

2:06-cv-11203-MOB-VMM   Doc # 37   Filed 06/11/09   Pg 14 of 32   Pg ID 1089

Prosecutorial misconduct must be so egregious as to deny the petitioner a fundamentally fair trial before habeas-corpus relief becomes available. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). In this regard, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Specifically, the Sixth Circuit takes into account "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive, whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused." *Hamelin v. Mitchell*, 354 F.3d 482, 494-95 (6th Cir. 2003).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). The inquiry is directed to deciding whether the state court's determination of the issue was an unreasonable application of clearly established federal law. *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.), *as amended on reh'g*, 348 F.3d 174 (2003), *cert. denied*, 124 S.Ct. 1825 (2004); *Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002). A prosecutor cannot comment on a defendant's decision not to testify at trial, although he or she may summarize the evidence and comment on its quantitative and qualitative significance. *Bowling v. Parker*, 344 F.3d 487, 514 (6th Cir. 2003).

However, where the evidence pointing to the defendant's guilt is strong and the prosecutor's improper comments go to the nature and intent of the crime, not to the defendant's guilt or innocence of the crime, the improper comments may be "error, but the jury would

probably have returned the verdict of guilty anyway," and habeas relief is not warranted. *Hamblin*, 354 F.3d at 495.

The Sixth Circuit has adopted a two-step approach in order to determine whether a defendant is entitled to a new trial based upon improper prosecutorial remarks. *See United States v. Carroll*, 26 F.3d 1380, 1385-90 (6th Cir. 1994). Although not announced in a habeas-corpus case, this test is also used in the habeas context. *See*, *e.g.*, *Spisak v. Mitchell*, 465 F.3d 684, 713 (6th Cir. 2006); *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006).

First, the court should determine whether the remarks were improper by examining the context of the remarks and existing precedent. *Carroll*, 26 F.3d at 1387-89. Second, it should determine whether the remarks were flagrant by applying the factors enunciated in *United States v. Leon*, 534 F.2d 667, 678-83 (6th Cir. 1976), *abrogation on other grounds recognized in United States v. Ellerbee*, 73 F.3d 105 (6th Cir. 1996).

> Flagrancy is determined by an examination of four factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused."

*Id. See also Boyle v. Million*, 201 F.3d 711, 717 (quoting *Carroll*, 26 F.3d at 549, 550). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). The Supreme Court held, in *Greer v. Miller*, 483 U.S. 756, 759 (1987), that a single, unanswered question about a defendant's post-arrest silence will not violate due-process rights if proper curative measures are taken following the question.

In the present case, while no instruction was given, the statement was such a remote or tangential reference to Petitioner's silence that no instruction was necessary. Arguably, giving an instruction could have drawn more attention to the issue and raised questions within the jurors' minds. The prosecutor did not seek to elicit the response, and did not use it to any advantage in the trial.

Against that backdrop, the Court finds that the prosecutor's conduct in this case was not so egregious or flagrant as to deprive Petitioner of a fair trial; the Michigan Court of Appeals's decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. Accordingly, Petitioner is not entitled to federal habeas-corpus relief with respect to this claim.

### B. Motion-to-preclude-Petitioner's-impeachment Claim

Next, Petitioner argues that the trial court erroneously denied his motion in limine to preclude the prosecutor from impeaching him with evidence of his prior conviction. Regarding this issue, the Michigan Court of Appeals stated:

> Next, defendant argues that the trial court erroneously denied his motion in limine to preclude the prosecutor from impeaching him with a 1985 armed robbery conviction. Because defendant never testified, however, this issue is waived. *People v. Finley*, 431 Mich. 506, 521, 525-526; 431 NW2d 19 (1988).

*Mitchell*, No. 247129, 2004 WL 1837673 at 1.

The Michigan Court of Appeals relied on *Finley* for its proposition, which adopted the rule set forth by the United States Supreme Court in *Luce v. United States*, 469 U.S. 38 (1984); *See, e.g.*, *Galindo v. Ylst*, 971 F.2d 1427, 1429 (9th Cir. 1992) (finding "a federal court's preliminary ruling on a question not reaching constitutional dimensions-such as a decision under

16

Rule 609(a)-is [not] reviewable on appeal") (citing *Luce*, 469 U.S. at 42-43).  In *Luce*, the

Supreme Court held that in order to preserve an objection to a trial court's ruling that a prior

conviction could be admitted, a defendant must actually testify at trial.  Here, Petitioner did not

testify.  Thus, this issue is not cognizable on habeas review.

### C.  Juror claim–Excused-for-cause claim

Next, Petitioner contends that two jurors, who either were prior victims of crimes or who

had family members who were prior victims of crimes, should have been excused for cause.  The

Michigan Court of Appeals rejected those arguments.  The Court of Appeals stated:

> Defendant next argues that two jurors who either were a prior
> victim of a crime or who had a family member who was a prior crime victim
> should have been excused for cause.  Because defendant never challenged the
> jurors for cause, this issue is not preserved.  We review unpreserved issues for
> plain error affecting defendant's substantial rights.  *People v. Carines*, 460 Mich.
> 750, 763; 597 NW2d 130 (1999); *People v. Eccles*, 260 Mich.App 379, 381-382;
> 677 NW2d 76 (2004).
>
> A prospective juror may be excused for cause if the juror is biased for or
> against a party or has a preconceived opinion or state of mind that would prevent
> the juror from rendering a fair verdict.  *See* MCR 6.412(D)(1) and MCR
> 2.511(D)(3), (4) and (5).  In this case, the record does not support defendant's
> claim that the jurors in question should have been disqualified for cause.  Despite
> being a victim of crime, or being related to a crime victim, the jurors indicated
> that they could decide the case fairly.  *See People v. Lee*, 212 Mich.App 228,
> 249-252; 537 NW2d 233 (1995).  Thus, plain error has not been shown.

*Mitchell*, No. 247129, 2004 WL 1837673 at 1.  In dismissing Petitioner's claim, the Court of

Appeals relied upon a state procedural bar–Petitioner never challenged the jurors for cause at

trial.  Thus, Petitioner's claims are barred for review.

A state prisoner who fails to comply with a state's procedural rules waives the right to

federal-habeas review absent a showing of cause for noncompliance and actual prejudice

17

resulting from the alleged constitutional violation, or a showing of fundamental miscarriage of

justice. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). In this case, Petitioner alleges

ineffective assistance of counsel as cause to excuse his default.

Constitutionally ineffective assistance of counsel can be "cause" for excusing a

procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to prevail on an

ineffective assistance of counsel claim, a petitioner must show that defense counsel's

performance was deficient and that the deficient performance prejudiced the defense. *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984). The Michigan Court of Appeals rejected Petitioner's

ineffective assistance claim:

> Defendant alternatively argues that his attorney was ineffective for failing
> to either challenge the jurors for cause or to peremptorily excuse the jurors. We
> disagree.
>
> Because defendant did not raise this ineffective assistance of counsel
> claim
> in an appropriate motion in the trial court, our review is limited to mistakes
> apparent on the record. *People v. Hurst*, 205 Mich.App 634, 641; 517 NW2d 858
> (1994); *see also People v. Ginther*, 390 Mich. 436, 442-444; 212 NW2d 922
> (1973).
>
> To establish ineffective assistance of counsel, defendant must show that
> counsel's performance was deficient and that, under an objective standard of
> reasonableness, counsel made an error so serious that he or she was not
> performing as the attorney guaranteed by the constitution. *People v. Pickens*, 446
> Mich. 298, 302-303; 521 NW2d 797 (1994). Defendant must overcome the
> presumption that the challenged conduct might be considered sound trial strategy
> and must further show that he was prejudiced by the error in question. *Id.* at 312,
> 314. That is, defendant must show that the error might have made a difference in
> the outcome of the trial. *People v. LaVearn*, 448 Mich. 207, 216; 528 NW2d 721
> (1995); *Pickens*, *supra* at 312, 314. Where counsel's conduct involves a choice of
> strategies, it is not deficient. *LaVearn*, *supra*. Every effort must be made to
> eliminate the distorting effects of hindsight. *Id.*; *see also People v. Stanaway*, 446
> Mich. 643, 688; 521 NW2d 557 (1994).
>
> In this case, because the record fails to establish that the jurors in question

18

should have been dismissed for cause, defendant has failed to show that trial counsel was ineffective for not requesting their dismissal for cause. Counsel is not required to make a futile challenge. *See People v. Kulpinski*, 243 Mich.App 8, 27; 620 NW2d 537 (2000).

Additionally, counsel's decision whether to peremptorily excuse the jurors was a matter of trial strategy, and defendant has failed to overcome the presumption of sound trial strategy. *People v. Robinson*, 154 Mich.App 92, 94-95; 397 NW2d 229 (1986). Therefore, this claim fails.

*Mitchell*, No. 247129, 2004 WL 1837673 at 2.

An important responsibility of a defense attorney is "to protect his client's constitutional right to a fair and impartial jury by using voir dire to identify and ferret out jurors who are biased against the defense. *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001). A defense attorney's actions during voir dire are presumed to be matters of trial strategy. *Id.*, at 615. Reviewing courts have recognized that the trial court is in the best position to determine the nature and extent of the alleged jury bias as well as an appropriate remedy. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998).

Regarding this issue, the Court finds that the Michigan Court of Appeals's decision was not unreasonable. The record reveals that, during voir dire, two jurors told the trial court that someone in their respective families had been the victims of robberies. Subsequently, the trial court and defense counsel carefully questioned each of the jurors in order to determine their impartiality. Each indicated that they could serve on the jury and be impartial. The trial court and defense counsel accepted their assertions. There was no apparent reason on the record for the trial court and defense counsel to disbelieve the jurors' affirmations. Thus, Petitioner has not overcome the presumption that defense counsel, after questioning the jurors, made a strategic decision to keep those particular jurors on the jury. Therefore, there is no need to determine

19

whether Petitioner can meet the prejudice prong of the "cause and prejudice" test.

Against that backdrop, the Court finds that this claim is procedurally defaulted and not

cognizable on habeas review.

**D. Ineffective-assistance-of-counsel claim regarding impeaching the complainant.**

Petitioner also argues that defense counsel was ineffective for failing to more vigorously

impeach the complainant and for failing to make an offer of proof concerning her expected

testimony. The Michigan Court of Appeals rejected those arguments:

> Whether and how to impeach a witness is a matter of trial strategy
> entrusted to counsel's professional judgment. *People v. Flowers*, 222 Mich.App
> 732, 737; 565 NW2d 12 (1997). To overcome the presumption of sound trial
> strategy, defendant must show that counsel's alleged impeachment error may
> have made a difference in the outcome by, for example, depriving defendant of a
> substantial defense. *See id.* In this case, defendant argues that counsel should
> have impeached the victim more vigorously concerning discrepancies between
> her testimony and the restaurant's surveillance photographs, in particular, whether
> the perpetrator had his hand in his waistband, whether the perpetrator reached into
> the cash register with his left or right hand, and whether the perpetrator's other
> hand was visible on the counter at the time of the robbery. These matters were
> principally relevant to the question whether the perpetrator was armed.
> Defendant was acquitted of the greater armed robbery charge. Concerning
> defendant's identity as the perpetrator, the victim testified that she had no doubt
> that defendant was the person who robbed her. Defendant has not demonstrated a
> reasonable possibility that further impeachment of the victim would have made a
> difference in the outcome.

*Mitchell*, No. 247129, 2004 WL 1837673 at 2-3.

The failure by trial counsel to cross-examine a prosecution witness can constitute

ineffective assistance of counsel. *Hence v. Smith*, 37 F.Supp.2d 970, 983 (E.D. Mich. 1999).

However, "[C]ourts generally entrust cross-examination techniques, like other matters of trial

strategy, to the professional discretion of counsel." *Millender v. Adams*, 187 F.Supp2d 852, 870

(E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are

not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F.Supp.2d 629, 651 (E.D. Mich. 2002).

In this case, the Court finds that counsel's performance did not constitute ineffective assistance of counsel, where the record demonstrates that counsel adequately cross-examined the complainant under the circumstances. There was no dispute that the robbery occurred. Rather, the dispute was whether Petitioner was, in fact, the robber. The complainant gave a description of the robber to the police and Petitioner was arrested on the description alone. The complainant identified Petitioner on three occasions; at a photo lineup, at the preliminary examination, and in person at trial. The discrepancies in testimony regarding the hand in the pocket and what the surveillance cameras showed were relevant to whether Petitioner was armed and not to whether Petitioner was the robber. Therefore, even if counsel was deficient in failing to cross-examine or impeach the complainant regarding these issues, Petitioner failed to show that the proposed cross-examination would have affected the outcome of the proceeding, in light of the evidence against him. *See Moss v. Hofbauer*, 286 F.3d 851, 866 (6th Cir. 2002).

Thus, the Court finds that the Michigan Court of Appeals's decision was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner is not entitled to habeas relief on this claim.

Similarly, regarding Petitioner's argument that counsel should have made an offer of proof with respect to his testimony, the Court of Appeals concluded:

> Nor has defendant shown that counsel was ineffective for failing to make an offer of proof concerning the substance of defendant's expected testimony. Counsel may have purposely refrained from making an offer of proof for strategical reasons because she was not certain what defendant would say, did not want to alert the prosecution to any anticipated testimony, or because she knew defendant would not say anything that would have made a difference. On appeal,

21

defendant has failed to submit an affidavit or make any other factual
representations concerning his proposed testimony.  Under these circumstances,
defendant has failed to overcome the presumption of sound trial strategy.

*Mitchell*, No. 247129, 2004 WL 1837673 at 3.

Whether to make and offer of proof regarding Petitioner's testimony, which issue should

be considered waived under *Luce*, was a matter of trial strategy.  *Luce* , 469 U.S. at 41, fn. 5.

Against that backdrop, the Court finds that the Michigan Court of Appeals's decision regarding

this issue was not contrary to, or an unreasonable application of, clearly established Supreme

Court precedent.  Petitioner is not entitled to habeas relief with respect to this claim.

### E.  Armed-robbery claim

In his next claim, Petitioner argues that the trial court erred in reinstating the armed-

robbery charge, which had been dismissed following the preliminary examination.  The

Michigan Court of Appeals, in addressing this issue, stated:

> At the preliminary examination, the district court must bind the defendant
> over for trial if it finds "probable cause that a crime was committed and probable
> cause to believe that the defendant committed it."  *People v. Goecke*, 457 Mich.
> 442, 469; 579 NW2d 868 (1998).  "Some evidence must be presented regarding
> each element of the crime or from which those elements may be inferred."  *Id.*
> "[I]t is not, however, the function of the examining magistrate to discharge the
> accused when the evidence conflicts or raises a reasonable doubt of the
> defendant's guilt; that is the province of the jury."  *Id.* at 469-470.
>
> The elements of armed robbery are: (1) an assault, (2) a felonious taking
> of
> property from the victim's presence or person, (3) while the defendant is armed
> with a dangerous weapon, or any article used or fashioned in a manner to lead the
> person so assaulted to reasonably believe it to be a dangerous weapon.  MCL 750
> .529; *People v. Taylor*, 245 Mich.App 293, 297; 628 NW2d 55 (2001).  A
> victim's subjective belief that the perpetrator had a weapon is, by itself,
> insufficient to establish armed robbery.  *Id.*  Rather, the prosecutor must introduce
> "some objective evidence of the existence of a weapon or article."  *Id.* at 297-298,
> quoting *People v. Jolly*, 442 Mich. 458, 468; 502 NW2d 177 (1993).  A finger or
> other object hidden inside clothing is objective evidence of a feigned weapon.

22

> *Taylor*, *supra* at 299, 302.  "Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article." *Id.* at 299, quoting *Jolly*, *supra* at 469-470.
>
>         In the present case, the victim testified at the preliminary examination, and at trial, that defendant kept his hand in his waistband and threatened to kill her during the robbery.  This testimony was sufficient to give rise to probable cause that defendant was armed with a dangerous or feigned weapon.  The trial court did not err in concluding that the district court abused its discretion in declining to bind defendant over for trial on the armed robbery charge.  The charge was properly reinstated.

*Mitchell*, No. 247129, 2004 WL 1837673 at 3.

Alleged trial-court errors in the application of state-evidentiary law are generally not cognizable as grounds for federal-habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).  Such is not the case here.  As noted by the Michigan Court of Appeals, the "testimony was sufficient to give rise to probable cause that [Petitioner] was armed with a dangerous or feigned weapon" and "the charge was properly reinstated."  *Mitchell*, No. 247129, 2004 WL 1837673 at 3.  Consequently, Petitioner's claim cannot form the basis for federal habeas-corpus relief.

### F.  Insufficient evidence

Petitioner also argues that there was insufficient evidence at trial to justify submitting the armed-robbery charge to the jury.

A claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254.  Because the Due Process Clause "forbids a State to convict a person of a crime

without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state-law question regarding the elements of the crime predicates the enforcement of [petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and all inferences to be drawn therefrom) in a light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1148 (2004). This standard of review obviously does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie,* 326 F.3d at 727. This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense; however, if the state has made the absence of a defense an element of the crime, sufficiency of evidence on the issue will then be relevant. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988). Circumstantial evidence may support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1601 (2004); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The last state court to issue a reasoned opinion rejecting this claim, the Michigan Court

of Appeals, held in pertinent part:

> The sufficiency of the evidence is to be evaluated by reviewing the evidence in the light most favorable to the prosecution. *People v. Petrella*, 424 Mich. 221, 268-270; 380 NW2d 11 (1985). The test is whether a rational trier of fact could find every element of the crime proven beyond a reasonable doubt. *Id.*; *see also People v. Hampton*, 407 Mich. 354, 368; 285 NW2d 284 (1979). Resolving credibility disputes is within the exclusive province of the trier of fact. *People v. Vaughn*, 186 Mich.App 376, 380; 465 NW2d 365 (1990).

> As discussed previously, evidence that defendant kept his hand in his waistband while threatening to kill the victim, viewed most favorably to the prosecution, was sufficient to justify submitting the armed robbery charge to the jury under a feigned weapon theory. Accordingly, we reject this claim of error.

*Mitchell*, No. 247129, 2004 WL 1837673 at 4.

Petitioner essentially claims that his conviction for unarmed robbery stemmed from an improper compromised verdict. *See Skrzycki v. Lafler*, 347 F.Supp.2d 448, 453 (E.D. Mich. 2004). First, to the extent that Petitioner relies upon state law to support this argument, he fails to state a claim for habeas relief. It is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle*, 502 U.S. at 67-68. Second, clearly established Supreme Court law provides that a defendant has a right not to be convicted except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the

submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights when the defendant is acquitted of that charge.

However, in *Daniels v. Burke*, the United States Court of Appeals for the Sixth Circuit recognized that "[s]ome courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." *Daniels v.*

25

*Burke*, 83 F.3d 760, 765 n. 4 (6th Cir.1996) (citing cases).  In *Daniels*, however, the Sixth

Circuit

found it unnecessary to decide the issue in light of the fact that the evidence of first-degree

murder was sufficient to submit that charge to the jury.  *Id.*

Petitioner's contention that there was insufficient evidence of armed robbery is belied by

the record.  Rather, evidence revealed that Petitioner kept his hand in his waistband while

threatening to kill the victim.  From that evidence, and viewed most favorably to the prosecution,

the evidence was sufficient to justify submitting the armed-robbery charge to the jury under a

feigned-weapon theory.  Accordingly, the Court concludes that the Michigan Court of Appeals's

resolution of this issue was reasonable, and therefore, Petitioner is not entitled to habeas relief on

this claim.

### G.  Photographic-identification claim

Next, Petitioner argues that the trial court erred in denying his motion to suppress

evidence that the victim identified him in a photographic array where he was already in custody.

Petitioner does not appear to argue that the photographic identification procedure was unduly

suggestive, rather, he argues that the trial court erred when it failed to order a live lineup.

The Michigan Court of Appeals rejected Petitioner's arguments.  It stated in pertinent part:

> Defendant next argues that the trial court erred in denying his motion to
> suppress evidence that the victim identified him in a photographic array where he
> was already in custody.  We disagree.

> A decision to admit identification evidence will not be reversed unless it is
> clearly erroneous.  *People v. Barclay*, 208 Mich.App 670, 675; 528 NW2d 842
> (1995).  A decision is clearly erroneous when, although there is evidence to
> support it, the reviewing court is left with the definite and firm conviction that a
> mistake has been made.  *Id.*

26

Defendant correctly observes that, "[s]ubject to certain exceptions, identification by photograph should not be used where the accused is in custody." *People v. Kurylczyk*, 443 Mich. 289, 298; 505 NW2d 528 (1993), quoting *People v. Anderson*, 389 Mich. 155, 186-187; 205 NW2d 461 (1973), *overruled on other grounds by People v. Hickman*, ___ Mich. ___; ___ NW2d ___; 2004 WL 1616425. In *Anderson*, *supra* at 186-187 n 22, the following exceptions to this general rule were identified:

1. It is not possible to arrange a proper lineup.

2. There are insufficient number of persons available with defendant's physical characteristics.

3. The nature of the case requires immediate identification.

4. The witnesses are at a place far distant from the location of the in-custody accused.

5. The subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification.  [Emphasis in original.]

In the present case, the prosecutor presented evidence that it was not possible to arrange a proper lineup because, although defendant was in custody, there was an insufficient number of persons available who matched defendant's unique physical characteristics.  The trial court found that "[t]here was an inadequate in-custody population to match the defendant's physical description." This finding is not clearly erroneous.  Accordingly, the photo identification was not improper and the trial court did not err in denying defendant's motion to suppress.

*Mitchell*, No. 247129, 2004 WL 1837673 at 4-5.

A defendant does not have a constitutional right to a line-up; his request is addressed to the trial court's sound discretion.  *United States v. Brown*, 699 F.2d 585, 593-94 (2nd Cir. 1983) (citing *United States v. Campbell*, 581 F.2d 22, 28 (2nd Cir. 1978); *United States v. Estremera*, 531 F.2d 1103, 1111 (2d Cir.), *cert. denied*, 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976); *United States v. Boston*, 508 F.2d 1171, 1176-77 (2d Cir. 1974), *cert. denied*, 421 U.S. 1001, 95

27

S.Ct. 2401, 44 L.Ed.2d 669 (1975); *United States v. Ravich*, 421 F.2d 1196, 1203 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970)).  In this case, the complainant identified Petitioner from a photographic lineup with defense counsel present, and then identified him in-person during the preliminary examination and again at trial.  Against that backdrop, the Court finds that there was no substantial likelihood that Petitioner was misidentified.  Consequently, Petitioner is not entitled to habeas relief on this claim.

### H.  Sentencing Claims

Finally, Petitioner argues (1) that the trial court did not properly articulate substantial and compelling reasons on the record for its departure in exceeding the sentencing guidelines range, and (2) that his sentence was disproportionate.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Friday v. Pitcher*, 200 F.Supp.2d 725, 744 (E.D.Mich. 2002).  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment.  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).  Generally, federal habeas review of a state-court sentence ends once the court makes a determination that the sentence is within the limitation set by statute.  *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000).  Because the Michigan Court of Appeals, the last court to issue a reasoned decision regarding this claim, found that Petitioner's sentence was within the bounds set by statute, this Court will not disturb the sentence on habeas review.  *Id.*  On remand, that Court of Appeals stated in pertinent part:

> As the trial court correctly noted, any felony punishable by five or more years in prison becomes punishable by "life or for a lesser term" when the defendant is an habitual offender fourth.  MCL 769.12(1)(a).  However, a life sentence is not within the guidelines even though authorized by the habitual

28

offender statute unless it is also included in the applicable grid cell for the sentencing offense. *People v. Houston*, 473 Mich. 399, 410 n 22; 702 NW2d 530 (2005); *People v. Greaux*, 461 Mich. 339, 345; 604 NW2d 327 (2000). In other words, while the court could lawfully impose a life sentence under MCL 769.12, it nonetheless was required to "follow the departure rules because the sentencing guidelines did not recommend a sentence of life in prison." *People v. Johnigan*, 265 Mich.App 463, 473-474; 696 NW2d 724 (2005). Therefore, the fact that the habitual offender statute authorizes a life sentence is not itself a valid basis for a departure.

The fact that defendant has committed several other offenses is taken into account by the prior record variables and accounted for his placement in Level F, the highest level in the grid. However, the guidelines do not take into account the following objective facts contained in the presentence report: (1) defendant's criminal history covers his entire adult life; (2) the revolving-door pattern of defendant's contacts with the criminal justice system; and (3) the four pending charges in district court which, though minor, underscore defendant's inability to conform his conduct to the rules of society. Therefore, the trial court did not err in finding substantial and compelling reasons to depart from the guidelines.

Once the court has a valid basis for departing from the guidelines, the reasons cited by the court must justify the particular departure. *Babcock*, *supra* at 273; *People v. Hegwood*, 465 Mich. 432, 437 n 10; 636 NW2d 127 (2001). In other words, the extent of the departure must be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Babcock*, *supra* at 264. "The amount a trial court departs from the guidelines is reviewed to determine whether the trial court abused its discretion." *Abramski*, *supra*.

Clearly, defendant is a career criminal who routinely engages in criminal behavior. He had been sentenced to: (1) time served in three prior cases; (2) jail terms in four district court cases; (3) prison terms in two other cases; and (4)

lesser punishments in yet two other cases. Despite this record, he refuses to refrain from criminal activity. Under the circumstances, the trial court did not abuse its discretion in imposing a life sentence.

*Mitchell*, No. 265290, 2006 WL 3077521 (Mich.Ct.App. Oct. 31, 2006).

Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *Shanks v. Wolfenbarger*, 387 F.Supp.2d 740, 752 (E.D. Mich. 2005). Petitioner's claim that the state trial court improperly departed above the

sentencing guidelines range would also not entitle him to habeas relief. *Welch v. Burke*, 49 F.Supp.2d 992, 1009 (E.D. Mich. 1999). The Court therefore finds that Petitioner is not entitled to habeas relief regarding his exceeding-the-sentencing-guidelines-range issue.

The Court also concludes that Petitioner is not entitled to relief with respect to his disproportionate argument.

The United States Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the United States Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and the sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.*, at 1001.

Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *See Ewing v. California*, 538 U.S. 11, 30-31 (2003) ( holding that [] sentence of 25 years to life in prison, imposed for the offense of felony grand theft under the three strikes law, is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition on cruel and unusual punishments); *But see Solem v. Helm*, 463 U.S. 277, 279 (1983) (holding that the Eighth Amendment prohibited "a life sentence without possibility of parole for a seventh nonviolent felony"). Federal courts will therefore not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See Seeger v. Straub*, 29 F.Supp.2d 385, 392 (E.D. Mich. 1998). A claim that a sentence is imposed in violation of Michigan's sentencing law does not state a claim for relief in a habeas proceeding where there is no claim that the sentence violates the cruel and unusual punishment clause of the Eighth

Amendment. *Hanks v. Jackson*, 123 F.Supp.2d 1061, 1075 (E.D. Mich. 2000).

Here, the state appellate court found that Petitioner's sentence was not disproportionate, based on his criminal history;[7] Petitioner's sentence is life with the possibility of parole. This Court finds that state appellate court's decision is not contrary to, or an unreasonable application of, federal law or Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief on this claim.

### V.  Conclusion

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Petitioner has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motions, [dkt. ## 20, 23, 25, 28, 30, and 31], are **DENIED** as moot.

**IT IS SO ORDERED.**


                                                s/Marianne O. Battani_____
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

---

[7]To the extent that Petitioner argues that he did not have notification or advice that he would be sentenced under the habitual offender, fourth, statute, his claim is without merit, based on the colloquy that took place on November 8, 2002, at a pretrial motion hearing. *See* fn. 6.

31

DATED: <u>June 11, 2009</u>

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the petitioner, and counsel for the respondent.

<u>s/Bernadette M. Thebolt</u>

Case Manager